**Reverse and Render and Opinion Filed June 7, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00460-CV

**RAINIER INCOME FUND I, LTD., AND RAINIER INCOME & GROWTH FUND II, LTD., Appellants/Cross-Appellees**
**V.**
**FRED GANS, Appellee/Cross-Appellant**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-06772-M**

## OPINION

Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Francis

Rainier Income Fund I, Ltd., and Rainier Income & Growth Fund II, Ltd., sued Fred Gans for contractual and fiduciary breaches in connection with his personal guaranties related to two failed real estate projects. The parties agreed to submit the dispute to a special judge under chapter 151 of the Texas Civil Practice and Remedies Code on stipulated facts, exhibits, and affidavits. The special judge ruled that Gans (1) breached one portion of the guaranties but not another and (2) did not owe a fiduciary duty to either Rainier appellant. After the special judge issued a final judgment, the referring trial court signed an amended order memorializing the judgment. The Rainier appellants appealed, and Gans cross-appealed..

In two substantive issues, appellants argue the special judge erred in determining Gans (1) was not obligated to repay their respective investments in the partnerships and (2) did not

owe the partnerships a fiduciary duty. In one issue on cross-appeal, Gans argues the special judge erred in determining he was obligated to pay accrued interest on partner loans and accrued Investment Preferences. For reasons set out below, we overrule appellants' issues and sustain Gans's issue. Accordingly, we reverse the trial court's order adopting the special judge's final judgment and render judgment that appellants take nothing on their claims.

Appellants entered into separate partnership agreements with Star Creek Construction GP, Inc. and FNS Holdings, L.P., to develop and lease two office buildings in Allen, Texas. Appellants and FNS were limited partners and Star Creek was the general partner in the partnerships, known as R-75 L.P. and R-75 II L.P. Gans is the president of Star Creek and co-owns FNS. Gans executed personal guaranties in connection with both projects. The relevant terms of the guaranties and the partnership agreements are the same for purposes of this opinion.

In connection with the partnership agreements, appellants made loans and capital contributions. In return for the capital contributions, they acquired ownership interests in R-75 and R-75 II. The Contribution Accounts accrued an Investment Preference at the per annum rate of ten percent, compounded annually and cumulatively. The Partner Loans accrued interest at the annual rate of ten percent. Both partnership agreements set out obligations of the respective partnerships to make certain monthly distributions to appellants of accrued interest on the Partner Loans and the accrued Investment Preferences.

The partnerships obtained bank loans to fund construction of the office building projects and gave the bank a first lien on both. The projects were not commercially successful, and the bank ultimately foreclosed on both. All assets of both projects were sold at the foreclosure sales, and no proceeds to either partnership were derived from the sales. Six months after the foreclosures, appellants made written demand on Gans under the guaranty agreements. When Gans refused to pay, appellants sued for breach of contract and breach of fiduciary duty.

Appellants sought to collect (1) accrued Investment Preferences, which were defined in the agreements as interest on the balance of appellants' Contribution Accounts, (2) accrued interest on loans made by appellants to the partnerships, (3) unpaid principal balances on loans made by appellants to the partnerships, and (4) the balances of appellants' Contribution Accounts to the partnerships.

Two-and-a-half years into the litigation, the parties filed an agreed motion to refer the case to a special judge under chapter 151 of the Texas Civil Practice and Remedies Code. The parties identified the issues to be referred as "all matters asserted in the pleadings of the Parties, including but not limited to breach of guaranty of limited partnership obligations, breach of fiduciary duty and fraud." As requested, the trial court referred the case to the special judge, who heard it on stipulated facts, exhibits, and affidavits.

After considering the evidence and the parties' briefing, the special judge issued an opinion construing the guaranty agreements in appellants' favor on one issue and in Gans's favor on the other. Specifically, the special judge determined (1) Gans breached the terms of the guaranties by refusing to pay the accrued interest on the Partner Loans and accrued Investment Preferences on a monthly basis during the existence of the partnerships, (2) Gans was not required by his guaranties to pay appellants the unpaid balances of the Partner Loans and Contribution Accounts, and (3) Gans did not owe a fiduciary duty to appellants. The special judge reduced his decision to a final judgment and awarded damages, prejudgment interest, and attorneys' fees to appellants. Appellants filed a motion for entry of judgment, and the trial court subsequently signed an amended order adopting the special judge's final judgment. Seven days later, Gans filed a motion for new trial. Within thirty days of the order, appellants filed notice of appeal. Gans filed notice of cross-appeal sixty-four days after the order was signed.

After the appeal and cross-appeal were perfected, this Court requested the parties to brief two issues related to our jurisdiction: (1) whether the appeal lies directly from the verdict of the special judge or whether the trial court must first enter an order on the verdict before the appellate timetable begins to run and (2) whether a motion for new trial, filed in the trial court after entry of an order on the special judge's verdict, extends the appellate deadlines under Texas Rule of Appellate Procedure 26.1. The parties addressed these issues in their briefing on the merits. Our resolution of these issues determines our jurisdiction over both the appeal and cross-appeal.

A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. TEX. R. APP. P. 25.1(c). To be timely, in a non-accelerated appeal, notice of appeal must be filed within thirty days of judgment unless a timely post-judgment motion is filed that extends the appellate timetable. *See* TEX. R. APP. P. 26.1(a). If a timely post-judgment motion is filed, such as a motion for new trial, the time is extended to ninety days after the judgment or order is signed. *Id*. If any party timely files a notice of appeal, another party may file notice of appeal within the applicable period stated above or fourteen days after the first filed notice of appeal, whichever is later. TEX. R. APP. P. 26.1(d).

Chapter 151 of the civil practice and remedies code governs trials by special judges. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 151.001–.013 (West 2011 & Supp. 2015). When a case is referred to a special judge by agreement, any or all issues in the case, whether in fact or law, may be referred, and the case is stayed pending the outcome of the trial. *Id*. § 151.001. The rules and statutes relating to procedure and evidence in the referring judge's court apply to the trial, and the special judge shall conduct the trial in the same manner as a court trying an issue without a jury. *Id*. §§ 151.005, 151.006(a). The special judge has the powers of the referring judge except he or she may not hold a person in contempt of court unless the person is a witness

–4–

before the special judge. *Id*. § 151.006(b). The special judge's "verdict" stands as a "verdict" of the referring judge's court, and unless otherwise provided, must be submitted not later than the 60th day after the day the trial adjourns. *Id*. § 151.011. If the special judge fails to submit the verdict in the time provided, the referring court may grant a new trial if a party makes such a request, notice is given, and a hearing is held. *Id*. § 151.012. In cases tried under chapter 151, the right to appeal is preserved. An appeal is from the order of the referring judge's court as provided in the Texas Rules of Civil Procedure and rules of appellate procedure. *Id*. § 151.013.

Beginning with the first issue, we agree with the parties that, in a chapter 151 case, the appellate timetable begins to run from the date the trial court signs the order on the verdict of the special judge. The plain language of section 151.013 provides that an appeal is from the "order of the referring judge's court," which can only mean the order memorializing the finality of the case. *See Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 64 S.W.3d 504, 505 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (per curiam) (explaining chapter 151 proceeding is stayed until outcome of trial before special judge, and parties cannot appeal until (1) the special judge submits a "verdict" to the trial court, (2) all parties and all claims in the case are disposed of, and (3) the trial court signs an order that memorializes the finality of the case); *Marin v. Marin*, No. 14-13-00749-CV, 2016 WL 1237847, at *2 (Tex. App.—Houston [14th Dist.] Mar. 29, 2016, no pet.) (mem. op). Appellants filed their notice of appeal twenty-seven days after the trial court's order; consequently, their appeal is timely. *See* TEX. R. APP. P. 26.1.

The parties do not agree on the second issue: whether, in this case, a motion for new trial extends the appellate timetable. If it does not, as argued by appellants, Gans's cross-appeal is untimely. Appellants argue that under chapter 151, a referring judge has "no power, authority or jurisdiction to review matters" referred to a special judge, and has no power to grant a new trial except in the limited circumstance where a special judge does not timely issue a verdict.

Consequently, they argue a motion for new trial cannot extend the appellate deadlines because the trial judge has no power to review the substance of the special judge's decision.

We agree with appellants that nothing in the statutory scheme empowers the trial court to substantively review, alter, or even affirm the special judge's verdict. *See* W. Frank Newton & David G. Swenson, *Adjudication by Privately Compensated Judges in Texas*, 36 BAYLOR L. REV. 813, 837 (1984) (in discussing predecessor of current chapter 151, stating it is "clear that the district judge will not be involved in reviewing the actions of the special judge" and the "absence of reviewing power in the district judge was intended by drafters of the statute"). Nevertheless, one purpose of a motion for new trial is to extend the appellate timetable. As stated by the supreme court, under other circumstances: "The filing of a motion for new trial in order to extend the appellate timetable is a matter of right, whether or not there is any sound or reasonable basis for the conclusion that a further motion is necessary." *Old Republic Ins. Co. v. Scott*, 846 S.W.2d 832, 833 (Tex. 1993) (per curiam).

Moreover, an appeal in a case referred to a special judge under chapter 151 is as provided in the rules of civil and appellate procedure. TEX. CIV. PRAC. & REM. CODE ANN. § 151.013. Under the rules of appellate procedure, a motion for new trial extends the appellate deadlines except in accelerated appeals. *See* TEX. R. APP. P. 26.1(a), 28.1(b). The case before us is not an accelerated appeal. And nothing on the face of rule 26 "compels the conclusion that only meritorious or potentially meritorious motions for new trial trigger the extension of the appeal deadline." *Popcap Games, Inc. v. Mumbojumbo, LLC*, 350 S.W.3d 699, 717 (Tex. App.—Dallas 2011, pet. denied).

Finally, chapter 151 specifically provides that the trial court may refer only some of the issues to the special judge. TEX. CIV. PRAC. & REM. CODE ANN. § 151.001. Consequently, a final judgment can potentially encompass issues determined by the trial court and issues

determined by the special judge.  In such a circumstance, a motion for new trial could be used to substantively challenge that part of the judgment determined by the trial court.  Creating one rule for cases in which a special judge hears only some of the issues and a second rule for cases in which a special judge hears all issues would create an unnecessary trap for the unwary and unduly complicate the application of appellate rule 26.1.

We conclude a motion for new trial, filed in the trial court after entry of an order on the special judge's verdict under chapter 151, extends the appellate deadline for filing notice of appeal.  Here, Gans's timely filed motion for new trial extended the deadline for filing his notice of cross-appeal to ninety days after the order was signed, or May 19.  Gans filed his notice of cross-appeal on April 23; therefore, it is timely.  *See* TEX. R. APP. P. 26.1(d).  We sustain appellants' first issue and overrule the second issue.

Having concluded we have jurisdiction over both the appeal and cross-appeal, we turn to the merits of this case.  In their third issue, appellants argue the special judge erred in determining that Gans was not obligated to pay them the unpaid balances of their respective Partner Loans and Contribution Accounts.  Specifically, they argue the foreclosure sales resulted in dissolving events under the terms of the partnership agreements, triggering Gans's obligation to repay their loans and contribution accounts.

A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform.  *Abel v. Alexander Oil Co.*, 474 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  To recover under a guaranty contract, a party must show proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor.  *Id.*

According to the rule of *strictissimi juris*, a guarantor may require the terms of his guaranty be strictly followed and the agreement not be extended beyond its precise terms by construction or implication. *Id.* But before we can apply the rule, we must examine the terms of the guaranty based on the language of the contract. *Id.*

When construing a guaranty agreement, our primary goal is to ascertain and give effect to the parties' intent. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Hasty v. Keller HCP Partners, L.P.*, 260 S.W.2d 666, 670 (Tex. App.—Dallas 2008, no pet.). The best guide to the parties' intent is the language of the guaranty, and where the language is clear and unambiguous, we may not look outside of that document to give it a different construction. *Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 WL 3485970, at *5 (Tex. App.—Houston [1st Dist.] June 2, 2015, pet. denied) (mem. op.); s*ee Sw. Sav. Ass'n v. Dunagan*, 392 S.W.2d 761, 767 (Tex. App.—Dallas 1965, writ ref'd n.r.e.). The interpretation of the guaranty is a question of law we review de novo. *Abel*, 474 S.W.3d at 800.

Gans's guaranty agreements provided, in pertinent part:

> In addition, in the event that [appellants'] Partner Loan[s] and Contribution Account[s] are not repaid in full as provided in Sections 8.2.4 and 8.2.5 upon the liquidation of the Partnership, Guarantor shall pay to [appellants] an amount equal to the sum of the remaining unpaid balances of [appellants'] Partner Loan[s] and Contribution Account[s].

Article 17 of the partnership agreements defined three "dissolving events" upon which the partnerships would be "dissolved, liquidated, and terminated." The event relevant to this issue provided as follows:

> 17.1.2 the sale by the Partnership of the entire Project and the collection of all amounts derived from any such sale or sales, including all amounts payable to the Partnership under any promissory notes or other evidences of indebtedness derived by the Partnership from any such sale or sales[.]

The parties agree that Gans's obligation to repay the balance of appellants' investments was triggered upon liquidation of the partnerships and that the partnership agreements set out the

–8–

"dissolving events" that would result in liquidation. The dispute concerns whether a foreclosure sale is a dissolving event, that is, "a sale by the Partnership of the entire Project and the collection of all amounts derived from any such sale or sales . . . ." Appellants contend it is. As authority, they rely on cases that provide (1) "a sale transfers legal title"; (2) a "sale" means "any conveyance of an estate for money or money's worth"; (3) a "sale" is a "transfer of property for a fixed price in money or its equivalent"; and (4) the Uniform Commercial Code definition of "sale" as the "passing of title from the seller to the buyer for a price."

That there was a "sale" of the properties is not in dispute—legal title to the properties was transferred in exchange for money. The question is *who* sold the properties. Appellants argue the parties intended that once they did not own and operate the commercial real estate projects that "represented the rationale and purpose" of the partnerships, the partnerships would be dissolved. They further assert the agreements do not specifically exclude any foreclosure or other manner of "sale." This argument, however, ignores the plain language of section 17.1.2, which specifically requires the sale to be "by the Partnership" for a dissolving event to occur. The properties were not sold by the partnerships; rather, they were sold by the substitute trustee at the direction of the bank at the foreclosure sales.

Moreover, in addition to a "sale by the Partnership," section 17.1.2 also requires "the collection of all amounts derived from any such sale or sales . . . ." The parties stipulated the partnerships did not collect any amounts as a result of those foreclosure sales. We agree with the special judge that the guaranties reflect an intent to establish personal liability on Gans to guarantee appellants would receive payment if the subject properties were sold by the partnership and funds were received in exchange. In other words, the purpose of the guaranties was to preclude the general partner from selling the properties and then refusing to distribute the funds. It is undisputed that neither appellants nor Gans received any payment as a result of the

–9–

foreclosure sale. And appellants' suggestion that the sale did result in "proceeds" in the form of a "credit" against the debt owed to the Bank does not persuade us otherwise.

We conclude the foreclosure sales were not dissolving events; consequently, the special judge did not err by concluding Gans had not breached his guaranty agreements with respect to the liquidation of the partnerships. We overrule appellants' third issue.

In their fourth issue, appellants assert the special judge erred by concluding Gans, individually, did not owe a fiduciary duty to the partnerships. They argue that Gans, as president of the general partner of the partnerships and co-owner of the only other limited partner, owed and breached fiduciary duties to them by not declaring the partnerships dissolved and liquidated.

There are two types of fiduciary relationships—formal and informal. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex. 1992). Formal fiduciary relationships arise as a matter of law and include the relationships between partners, among others. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Informal relationships arise from "a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). To impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

With respect to a formal relationship, Gans is not a partner in the partnership; he is an officer of the general partner. Although appellants cite several cases involving partners who owe duties, appellants do not cite any case for the proposition that an officer of the general partner of a partnership owes a fiduciary duty to the partnership. Instead, they argue Gans "cannot be distinguished from the entities he controls." Appellants did not, however, allege that the

–10–

corporate identity of Star Creek, the general partner, should be disregarded. Appellants have not shown a formal fiduciary relationship.

To the extent appellants are suggesting an informal fiduciary relationship existed between Gans and appellants, they have not directed us to any evidence to show a prior relationship between the parties existed. *See id.,* 959 S.W.2d at 177. We conclude the special judge did not err by concluding Gans, individually, did not owe a fiduciary duty to the partnerships. We overrule the fourth issue.

CROSS-APPEAL

In his cross-appeal, Gans contends the special judge erred in ruling he had an obligation to pay the accrued interest on the Partner Loans and accrued Investment Preferences on a monthly basis during the partnerships' existence. According to Gans, his guaranty of these items was contingent on the availability of cash flow, and because there was no cash flow, he was not obligated to pay the amounts. We agree.

The portion of the guaranty agreements relevant to this issue provides as follows:

> Guarantor absolutely, unconditionally and irrevocably hereby guarantees the prompt and complete payment and performance of, and agrees to pay and perform as primary obligor, the obligations and duties imposed upon the Partnership under the terms of the LPA to make monthly distributions to [appellants] of (i) the accrued interest with respect to [appellants'] Partner Loan[s] as required under Section 8.2.1 and (ii) the Investment Preference[s] as required under Section 8.2.2 of the LPA.

Article 8 of the partnership agreements governs distribution of cash. The relevant portions provide as follows:

> **Section 8.2 – Distribution of Cash Flow**
>
> Except as otherwise provided in Article 17 and subject to the modification described in Section 15.2 in the event of a default in FNS of its obligations hereunder, the cash flow of the Partnership for each calendar month, as determined under Section 8.1, beginning within sixty (60) days following substantial completion of construction of the Improvements, shall be distributed to the Partners by the Partnership on or before the last day of the next succeeding

–11–

calendar month (or earlier, if available) in the following manner and in the following order of priority:

8.2.1   First, to [appellants] in an amount necessary to pay all accrued but unpaid interest owed with respect to [appellants'] Partner Loan[s]; then

8.2.2   To [appellants] in an amount necessary to pay in full [appellants'] accrued Investment Preference[s]; then

8.2.3   To FNS in an amount necessary to pay all accrued but unpaid interest owed with respect to the FNS Partner Loans; then

8.2.4   To the Partners pro rata in accordance with and to the extent of the unpaid principal balances of their respective Partner Loans; then

8.2.5   To the Partners pro rata in accordance with and to the extent of the balances standing in their respective Contribution Accounts; then

8.2.6   To the Partners in proportion to their respective Percentage Interests.

Notwithstanding any provision of this Agreement to the contrary, the Partnership shall distribute to [appellants] the then accrued but unpaid Investment Preference[s] on the Effective Date. In addition, the Partnership shall thereafter distribute to [appellants] the entire balance of the accrued interest on [appellants'] Partner Loan[s] and of [appellants'] Investment Preference[s] determined as of the end of each calendar month during the term of this Agreement on or before the last day of the immediately following calendar month.

Under the plain language of Gans's guaranty agreement, he was obligated to pay the monthly distributions of accrued interest on Partner Loans and the Investment Preferences only "as required" under sections 8.2.1 and 8.2.2. Sections 8.2.1 and 8.2.2 of the partnership agreements relate to the priority of the distribution of cash flow and only have meaning by considering the first paragraph of section 8.2. In other words, in the absence of cash flow, the provisions have no effect. Consequently, giving effect to the parties' intent as shown by the plain language of the agreements, we conclude Gans was obligated to make the payments only if there were cash flow.

Nevertheless, relying on the last paragraph of Section 8.2, the special judge determined Gans was obligated to pay the monthly interest and Investment Preferences without regard to cash flow until there is a liquidation of the partnership. We agree that, by using the language

"[notwithstanding any provision . . . to the contrary," the last paragraph contemplates the making of the payments at issue here regardless of whether there is "cash flow." However, as stated previously, Gans's obligations under the guaranties were expressly limited to what was required under sections 8.2.1 and 8.2.2, and both sections require "cash flow." Had the parties intended to obligate Gans in the absence of cash flow under the last paragraph, they could have specifically said so by using language to that effect. They did not. So while the partnerships were required to make distributions, regardless of cash flow, Gans did not guarantee those payments.[1] We conclude Gans was not obligated to pay the accrued interest on Partner Loans and accrued Investment Preferences. Accordingly, we sustain Gans's sole issue on cross-appeal.

We reverse the trial court's amended order adopting the special judge's final judgment awarding damages and attorneys' fees against Gans and in favor of appellants. We render judgment that appellants take nothing on their claims against Gans.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

150460F.P05

---

[1] The partnership agreements addressed the circumstance in which there was a cash flow deficit. Section 4.2 provided:

If the Partnership is, or is reasonably expected to be, unable to pay its cash obligations as and when they become due, including any cash flow deficits arising from the Partnership's obligation to make monthly distributions of the entire balance of the accrued interest on [appellants'] Partner Loan[s] and [appellants'] Investment Preference[s] as provided in Section 8.2 hereof, and therefore has an actual cash flow deficit, then the General Partner shall give Notice to the Partners of such deficit and FNS shall, within ten (10) days from receipt of such Notice, make a Partner Loan in order to fund such deficit in accordance with the terms of Article 5 below.

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RAINIER INCOME FUND I, LTD. AND
RAINIER INCOME & GROWTH FUND II,
LTD., Appellants

No. 05-15-00460-CV          V.

FRED GANS, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-06772-M.
Opinion delivered by Justice Francis;
Justices Lang-Miers and Myers
participating.

In accordance with this Court's opinion of this date, the trial court's amended order memorializing the special judge's final judgment is **REVERSED** and judgment is **RENDERED** that appellants Rainier Income Fund I, Ltd., and Rainier Income & Growth Fund II, Ltd., take nothing on their claims against appellee Fred Gans.

It is **ORDERED** that appellee Fred Gans recover his costs of this appeal from appellants Rainier Income Fund I, Ltd., and Rainier Income & Growth Fund II, Ltd.

Judgment entered June 7, 2016.